Please call the next case. Call 14-04-15, Catering & More v. Workers' Compensation Commission. Counsel may proceed. Thank you. Brad Elward on behalf of Catering & More. I want to focus briefly today on two issues from our brief. First, the question of TTD benefits and when an employee is obligated to tell and document that her restrictions have been lessened and to ask to return to work. And second, as to the total knee replacement, whether that was causally related to the accident in question here or related to a preexisting degenerative condition. On the TTD issue, the claimant was given a set of restrictions at the end of August 2011. She was unable to return to work. The employer was unable to accommodate those restrictions. Later in that fall, the claimant decided to file for unemployment benefits. Towards the end of November, her medical restrictions were lessened, and I believe that was on the 30th. And the following day, December 1st, they actually had the unemployment hearing, which the employer was present at. The employer at that time first learned that the restrictions had been lessened. She testified at arbitration that had she known that, those restrictions could have been accommodated. Can I just interject, Mr. Elwood? Yes. The commission at one point credited the claimant's testimony that she notified the employer of the restrictions. So there was a conflict in the testimony. There was, there was. And the commission sought to believe the claimant in that, right? Yes, yes. The commission relied on what the claimant had said. But I think the point here that we're trying to raise is when the employer believes that the claimant is no longer employed and is off looking for employment on their own, what is the obligation to offer work restrictions at that point? If you have a worker who leaves your employ, do you have to track them down and say, hey, I see your restrictions have, have, have lessened, we're going to offer you an opportunity to come back to work? When did the claimant, can you recall, when did she testify, she informed the employer? And it wasn't, didn't she say, you know, within a short period of time while she was still there? Well, we know on the November 30th that within a day that the employer had those because of the unemployment hearing. She had those at the unemployment hearing. The question about really whether or not they were sent, I think, related to the February 12th, 2012 restriction. And petitioners said, well, we faxed those. And the employer said, well, we, I didn't get them. But there was no documentation to support that the fax was sent. There was nothing to indicate outside of just a plaintiff versus the employer as to whether or not that was received. But I think we have to look at that attempted notification in the context of the employer thought she wasn't working for her at the time. And so I guess in a case like this, what we would hope from the court is some guidance on when an employee, who has to hawk the ability to return to work, particularly in light of a case where the employer is aware at some point that the petitioner has gone out and filed unemployment and is looking for jobs elsewhere. Well, there was conflicting testimony about that issue, though, but it wasn't there. And, I mean, didn't the commission determine that conflict in favor of the petitioner? I mean, the petitioner said, you know, I sent the restrictions and so forth. The employer said I never got them. That's true. You know, the employer found that in favor of the petitioner, basically. That's true. Does that dynamic change when the petitioner has apparently left the employment and gone to work elsewhere? And what at that point is the employer's obligation? Do you have to then go back to somebody who's no longer working for you and say, hey, we've got work. You can come back to work. I don't know if the law requires an employer to do that. And at what point is the employer allowed to say, you left. You quit. I don't care what your restrictions are. You left. Okay, and what you're saying is the employer was aware of the other work because she was working someplace else. How did the employer know? No, I don't believe she was working somewhere else. There was no evidence she ever got a job offer. That's correct, yes. She was not working. She didn't leave and was working someplace else. She was drawing unemployment. She had sought other employment and she had filed the claim and they had the unemployment hearing. But I'm not representing that she had another job. No, she did not. So I think in that situation, I think when we look at the employer's testimony, she said, I thought when I found out that she had the unemployment hearing that she wasn't coming back and she wasn't going to be working for us. So you can say, well, okay, the petitioner sent a restriction to the employer. But then again, we have to remind ourselves that the employer is responsible for monitoring the medical and the claim and whether or not the employee works there or not, you're still going to send them your medical to have it processed to proceed with the rest of your claim. So it's got a multiple purpose. It's not just bringing you back to work. Here we don't really have a situation where the claimant has said, I want to come back to work. She didn't say it in the fall. It doesn't seem like she said it at the unemployment hearing. And grant you, it seemed like the two tried to bring it up at the unemployment hearing and the hearing officer said, that's not why we're here. We're not going to talk about that. But interestingly, the claimant never followed up after that, other than to submit that arguable letter in February. And yes, the employer never followed up on that either. So what is the law in this situation? Where are the obligations? I think that has to be decided before we can look at the facts here. And that's really what we're asking the court to do on the TTD point. On the second issue that we wanted to raise, the total knee replacement. Now, it's my understanding that the claimant has already undergone this. It's not in the record, but she has. I'm positive my opponent will raise that. She has gone ahead and had that surgery. The question that we're really asking is, was the need for that surgery triggered by this employment event? And again, I know that your first reaction is going to be, well, there's some conflicting evidence here. Why isn't this just our standard manifest way of the evidence situation? But I think we would like you to consider this. She had a significant ongoing degenerative condition that preexisted this work accident. She testified, and we have records from Dr. Rafe, that she had significant problems with her left knee and underwent treatment in the spring before this accident took place in the spring of 2011. Dr. Rafe had told her at one time, and this comes from the RIME doctor's history that he took from her, Dr. Rafe had told her at one time that you will have problems with this knee down the road. Now, that's not enough by itself. But when we couple that with a couple other points, first of all, when Dr. Derhaki was asked about whether or not she needed surgery, one of the things he looked at was this note that came from Dr. Crickard that indicated she was continuing to have pain. But our point in this is we have a documented lifting, basically, or a lessening of her medical restrictions from the August timeframe to the November timeframe to the February timeframe. And she was clearly improving. People who are continuing to have problems don't see their restrictions get better and better and better. And when you look at those and you compare those, that number 836 that we cited in page 13 of our brief, and you couple that against the November 30th restriction and the wording of the February 12th, you see her condition is getting better and better and better. That documented evidence, I think, goes very sharply against the fact that she was having pain and required to have a... Well, the commission, however, determined, so to speak, that she never returned to baseline. She may have been improving, but the commission determined that she never improved to baseline, correct? They did. They did. That's true. So how do you respond to that? I think the response to that is to look at Derhaki's deposition where he, and I'll point to a couple spots at page 544 of his testimony. He said the continued complaints that he saw her for after June 11th could have been the result of her arthritic condition. It was possible that the aggravation that he described that you're referring to, Your Honor, could have been resolved and that her continuing complaints were solely related to her pre-existing osteoarthritis. And he was asked, was a total knee replacement an option for this lady if we assume that no accident occurred, no work accident occurred? And he said yes. And so when we put that opinion next to the pre-existing condition and these three documented restriction documents that show that she's getting better and better, I think the conclusion that this need for the total knee replacement was related to this accident is against the manifest way of the evidence. And that's really the core of our position. Let me question you about that. I thought that both Derhaki and Crickard recommended that Klayman undergo joint replacement surgery to treat her left knee. They did not recommend that? No, I think they did. But the question is not whether she needed surgery, but what was the precipitating factor for that surgery? Was it this accident or was it the pre-existing degenerative condition? And that's what we're disputing here. I think our IME said that she had to have surgery. I don't think that's at issue. The question is what was the causal factor for that? And we believe that based on the evidence that I've outlined, particularly what Dr. Derhaki acknowledged, that it was not this accident at work. It was a pre-existing degenerative condition. What about this famous maxim? I just thought I saw it in your argument. It says that recovery can be based if the accident that we're talking about here is a quote-unquote causative factor. It does not have to be the primary or the sole factor. What if you have a combination of factors? Well, I think that definitely reflects the law. And I think Dr. Derhaki tried to acknowledge that by his testimony that at one point he was asked, I think it was by opposing counsel, even if she had this degenerative condition before the accident, could it have aggravated? And he said yes. So the question was whether it's a temporary aggravation or permanent aggravation. And it's our position, based on the examination at page 544 of the record, that it was a temporary aggravation and that the real need for the surgery was a pre-existing degenerative condition. Thank you. Thank you, Counselor. Counselor, may I respond? Thank you. May it please the Court. I'm Charles Ennis, and I represent the petitioner, Gail Volston, in this case. As far as TDD goes, the evidence was conflicting, but the commission relied upon my client's testimony that all of these work restrictions were provided to the employer. There's no evidence that the employer ever offered any work to my client. There was an issue raised about one of the restrictions coming up in the course of an unemployment hearing. I think if the employer had work available within those restrictions at the time, if she wanted to defeat the unemployment claim, she could have simply said, well, I have work available for you within those restrictions, come back to work. She didn't say that, and I think that undermines the credibility of the employer in that situation. The arbitrator here had the opportunity to view all the witnesses and judge their credibility, and the commission relied upon the claimant's testimony as far as providing all these restrictions to the employer, so I think that decision must stand before this Court. As far as the medical expenses are concerned, the prospective medical expenses, the surgery for knee replacement, the only surgeons who addressed that need were Dr. Picard and Dr. DeHockey. They both said that that was necessary treatment, and I think it's clear from the record from Dr. DeHockey's testimony in this case that his testimony was beyond a reasonable degree of medical certainty that the work accident was a contributing cause of the need for the knee replacement surgery, that it was one factor, and that's all we need to establish, as is the law in this case. So I think the evidence is overwhelming here that that was appropriate, an appropriate award from the commission, that that award should be affirmed. Nevertheless, if there's any questions.  Thank you very much. Thank you, counsel, for your arguments. This matter will be taken under advisement, and written disposition shall issue.